[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13220

Non-Argument Calendar

_____

YOUSSEF AFILAL EL ALAMI,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals
Agency No. A076-233-311

_____

2                    Opinion of the Court                    21-13220

_____

No. 22-10529

Non-Argument Calendar

_____

YOUSSEF AFILAL EL ALAMI,

                                                    Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

                                                    Respondent.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals
Agency No. A076-233-311

_____

Before WILLIAM PRYOR, Chief Judge, and NEWSOM and BRASHER,
Circuit Judges.

PER CURIAM:

Youssef Afilal El Alami, a native and citizen of Morocco, petitions for review of orders of the Board of Immigration Appeals affirming the denial of a discretionary waiver of inadmissibility, 8 U.S.C. § 1227(a)(1)(H), and denying motions to remand and for reconsideration. We dismiss in part and deny in part El Alami's petitions for review.

In October 1996, El Alami entered the United States as a visitor. Three months later, El Alami married a citizen, Vickie Roberts, and divorced her one month later. In March 1997, El Alami married another citizen, Lillie Vazquez, who petitioned for El Alami to receive an immigrant visa as her spouse while El Alami filed for adjustment of status. During interviews with officials in October and November 1997 and March 1998, El Alami represented that he had no children, and in 1998, his application for adjustment of status and his visa petition were approved.

In 2001, El Alami applied for naturalization, again representing that he had no children. When he failed to appear for his interview, immigration officials denied his application without prejudice for, among other reasons, failing to prove a marital union with his wife. In 2004, El Alami divorced Vazquez and, nine months later, applied again for naturalization. In his second application, El Alami revealed that he had two children with his girlfriend "Nabila." The children were born in June 1997 and September 2001, during his marriage to Vazquez. When immigration officials asked El Alami why he had not disclosed his children in his first application, he explained that he thought the question pertained to his

marriage with Vazquez. In 2006, El Alami's second application was denied because of his repeated false representations to immigration officials that he had no children and his lack of good moral character. In 2012, El Alami filed a third application for naturalization, which listed his children.

In September 2016, the Department of Homeland Security denied El Alami's third application and issued a notice to appear charging him as removable because, at the time of his adjustment of status, he sought to procure admission by fraud or a willful misrepresentation of a material fact. 8 U.S.C. §§ 1182(a)(6)(C)(i), 1227(a)(1)(A). The notice alleged that, during his interviews for his visa petition and application for adjustment of status, he falsely represented to immigration officials that he had no children, when he knew that he had a child who was born to a woman other than his petitioning spouse. El Alami admitted the factual allegations but denied removability. At a hearing, the immigration judge sustained the charge of removability and found that El Alami's misrepresentation was material because it "tend[ed] to shut off a line of inquiry that [was] relevant to the alien's admissibility and would have disclosed other facts relevant to his eligibility." El Alami did not file an administrative appeal.

El Alami applied to have the grounds of inadmissibility waived. 8 U.S.C. § 1227(a)(1)(H). At a merits hearing, El Alami testified that he met Vazquez in 1994. He stated that he met Nabila at a friend's house at the "end of [19]96," and had a sexual relationship with her before both of his marriages. When he filed for

adjustment of status in March 1997, he had no children and did not know that Nabila was pregnant until the child was born in June 1997. He admitted that, at the time of his adjustment of status interview, he was aware that he had a child. He explained that he denied having any children at the interview because he believed the immigration officials wanted to know whether he had any children born to his marriage with Vazquez. El Alami described his relationship with Nabila as a "one-night stand" and stated that he and Nabila had a second child in 2001, which was a result of another "one-night stand" when Vazquez was out of town. After El Alami divorced Vazquez, he began living with Nabila. El Alami conceded that the circumstances "look[ed] suspicious."

On cross-examination, El Alami testified that Nabila was from the "same area" in Morocco, but he did not meet her there. When asked if he traveled to the United States with Nabila in October 1996, he said he did not remember. El Alami was unsure if Nabila married a citizen in the same courthouse and on the same day that he married his first wife, Roberts. And El Alami admitted that, during the November 1997 home interview with immigration officials, he said that Nabila, who was in the home with their child, "was [his] cousin."

The immigration judge asked the Department if it had any record that El Alami entered the United States with Nabila or that he and Nabila each married citizens on the same day. The Department produced a three-page investigative report by its Fraud Detection and National Security Directorate. After the immigration

judge gave El Alami's counsel time to review the report, El Alami's counsel stated, "I have no objection to the document, however, at some point, I reserve the right to ask the court to subpoena the writer."

The fraud report stated that El Alami and Nabila entered the United States together on October 3, 1996, and briefly lived together in New York. The report stated it was "logical" to infer that El Alami and Nabila were married because she wore a hijab in her passport photograph, which was a "strong indication of a marital relationship." The report stated that Nabila married a citizen on January 31, 1997, in the same courthouse and on the same day that El Alami married Roberts, and both citizen spouses filed immigration petitions for them. The report stated that Nabila likely was pregnant when she entered the United States. The report alleged that El Alami and Nabila made several trips to Morocco together with their first child. The report also stated that upon interviewing one of the affiants for El Alami's 1999 petition to remove conditions on his residence, the affiant stated that she knew El Alami and Nabila "as a husband and wife whom always lived together" and had children together.

In a colloquy with the immigration judge, El Alami said that he did not remember entering the United States with Nabila, but he admitted that he lived in New York and made "a few trips" to Morocco with Nabila and their first child. El Alami's counsel moved for a continuance to rebut the fraud report, but the Department contended that, because removability had been established

and the immigration court had already found that El Alami committed fraud, the judge needed only to decide whether it would grant discretionary relief. The immigration judge agreed that because the judge had earlier sustained the charge of removability, the Department could use the fraud report for impeachment purposes to show the nature and duration of El Alami's fraud.

The immigration judge denied the application for a waiver of inadmissibility and stated that it "formally finds by clear and convincing evidence . . . that the respondent is removable as charged." The immigration judge stated that, although the case initially appeared to be "an easy grant," cross-examination and the documents submitted by the Department revealed that this case involved more than El Alami failing to disclose a child on his forms. The immigration judge found that El Alami provided false testimony about the "one-night stand" nature of his relationship with Nabila to obtain a waiver. And the immigration judge found that, because the Department proved that El Alami had operated with an "underhanded and deceitful approach" to adjust his status, he did not merit a favorable exercise of discretion.

El Alami's notice of appeal to the Board referenced only the denial of a waiver under section § 1227(a)(1)(H). El Alami argued that the immigration judge erred by admitting the fraud report, finding that he provided false testimony, and denying a continuance, which prevented him from cross-examining the author of the report. El Alami also moved for a remand to present evidence rebutting the fraud report. El Alami attached medical records that his

first child was born prematurely to establish Nabila was not pregnant when she entered the United States. El Alami submitted his marriage certificate from Orange County, Florida, and Nabila's marriage certificate from Osceola County, Florida, which were dated December 30, 1996, and January 31, 1997, respectively. El Alami also submitted articles about Muslim women who wear a hijab for non-marital reasons.

The Board dismissed El Alami's appeal. It stated that he did not challenge the removability decision. *See* 8 U.S.C. §§ 1182(a)(6)(C)(i), 1227(a)(1)(A). And it adopted and affirmed the immigration judge's decision to deny discretionary relief. The Board concluded that it was not error to admit the fraud report because El Alami's counsel did not object to it and El Alami had not established that the report contained factual errors, was not probative, or lacked indicia of reliability. The Board also denied the motion to remand because the evidence submitted on appeal was not previously unavailable and El Alami did not prove that the new evidence was likely to change the immigration judge's discretionary denial of the waiver.

El Alami moved for reconsideration "in part, to ensure that he has properly exhausted certain claims." El Alami argued that the Board could not consider the merits of a waiver without "concomitant reconsideration" of whether he was removable. El Alami contended that he made no material misrepresentations by failing to disclose his child with Nabila and that the immigration judge should have explained how the omission prevented immigration

officials from investigating the bona fide nature of his marriage with Vazquez.

The Board denied reconsideration. The Board ruled that El Alami waived the issue of removability because he could have contested it on appeal but failed to do so. The Board also stated that, although the new evidence showed that El Alami married Roberts one month earlier than stated in the fraud report, El Alami was the source of the error, as he provided the incorrect date in his immigration forms. And the Board ruled that it did not err in denying El Alami's motion to remand because the immigration judge's credibility finding was supported by the fraud report.

The decision of the Board is the final judgment in El Alami's immigration proceeding. *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016). Insofar as the Board agreed with the immigration judge's "reasoning, we review . . . [both] decisions . . . to the extent of the agreement." *Id.* "[W]e review conclusions of law *de novo* and factual determinations under the substantial evidence test." *Id.* And we review our own jurisdiction *de novo* and consider jurisdictional issues *sua sponte. Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 866 (11th Cir. 2018).

We lack jurisdiction to consider El Alami's challenge to the immigration judge's removability decision because he failed to exhaust the issue by raising it in his brief to the Board, and he did not reference the decision in his notice of appeal to the Board. *See Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297-98 (11th Cir. 2015). And we do not consider El Alami's argument that his motion for

reconsideration preserved his challenge to the removability decision because he makes that argument for the first time in reply. *See Farah v. U.S. Att'y Gen.*, 12 F.4th 1312, 1324 (11th Cir. 2021).

El Alami argues that the Board erred by failing *sua sponte* to review the immigration judge's removability decision, as was required under *Matter of Tijam*, 22 I. & N. 408 (BIA 1998). Although we have jurisdiction to consider whether the Board applied the correct standard, *see Farah*, 12 F.4th at 1325, we reject this argument. *Tijam* did not require the Board to reweigh issues of removability. *Tijam* instead provided factors to guide the agency's discretionary process. *See Tijam*, 22 I. & N. at 412-13. The Board did not err by not deciding *sua sponte* whether the immigration judge erred in sustaining the removability charge.

We lack jurisdiction over the discretionary decision to deny El Alami's waiver application. 8 U.S.C. § 1252(a)(2)(B); *Alhuay v. U.S. Att'y Gen.*, 661 F.3d 534, 549 (11th Cir. 2011). But we have jurisdiction to review El Alami's constitutional and legal challenges to the denial of discretionary relief. *Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1275-76 (11th Cir. 2020) (en banc). El Alami raises several legal arguments regarding the Department's fraud report, all of which fail.

El Alami argues that the Board and the immigration judge violated his right to due process by relying on the fraud report because it was unreliable and lacked probative value. The Board rejected this argument, in part, because El Alami, through counsel, failed to object to the fraud report at the merits hearing, so he could

not challenge it on administrative appeal. El Alami does not challenge this determination in his opening brief, so we do not address it. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

Insofar as the Board also concluded that El Alami failed to establish that the fraud report was not probative and lacked indicia of reliability, we discern no violation of due process. Immigration judges have broad discretion to admit and consider relevant and probative evidence, and evidence is generally admissible in immigration proceedings if it is probative and fundamentally fair to the alien. *Matter of Y-S-L-C-*, 26 I. & N. Dec. 688, 690 (BIA 2015); *Matter of D-R-*, 25 I. & N. Dec. 445, 458 (BIA 2011). The fraud report was probative of El Alami's character and truthfulness on direct examination and relevant to the issue of whether he was deserving of discretionary relief. Contrary to his arguments, his testimony corroborated several facts contained in the fraud report, including that he and Nabila were from the same area in Morocco and had made several trips to Morocco together with their first child. And El Alami has not refuted that he and Nabila traveled to the United States together in 1996. As for the authenticity of the fraud report, the Department proffered that it was authored by one of its subdepartments, and El Alami did not question or dispute that it was what the Department purported it to be. As the Board acknowledged, we have applied a presumption of regularity to the Board's review of documents submitted in immigration proceedings. *See Lyashcynska v. U.S. Att'y Gen.*, 676 F.3d 962, 970 (11th Cir. 2012).

In addition, because the fraud report was sufficiently reliable and was not the only evidence supporting removal, we reject El Alami's contention that the multiple levels of hearsay in it violated due process. *See Indrawati*, 779 F.3d at 1299, 1301-02.

El Alami argues that the fraud report contained inaccurate statements and that the Board erred by denying his motion to remand based on those inaccuracies. But the only factual inaccuracy identified by El Alami—the date and place of his first marriage—was a result of his own incorrect statement on his immigration forms. The medical records he submitted to the Board did not refute the fraud report or the immigration judge's understanding of the report because neither expressed certainty that Nabila was pregnant when she entered the United States. And the articles about the hijab did not establish that the fraud report clearly erred in speculating that it was a "strong indication of a marital relationship." Because the evidence failed to establish serious errors that rendered the fraud report unreliable, the evidence was not likely to change the outcome, and the Board did not abuse its discretion in denying El Alami's motion to remand for further proceedings. *See I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992); *Ali v. U.S. Att'y Gen.*, 443 F.3d 804, 813 (11th Cir. 2006). And because the additional evidence did not establish serious error that was likely to change the outcome, the immigration judge did not abuse his discretion in denying a continuance. *See Merchant v. U.S. Att'y Gen.*, 461 F.3d 1375, 1377 (11th Cir. 2006).

We also reject El Alami's argument that the Department mischaracterized the fraud report as impeachment evidence to evade the 15-day deadline for submitting evidence. The record establishes that when the immigration judge asked for records supporting counsel's questions on cross-examination, the Department's counsel stated that, with a short recess to make redactions, it "could produce a report." It does not appear that the Department intended to introduce the fraud report.

El Alami argues too that he was deprived of due process because the Department did not produce the author of the fraud report or the witnesses referenced in it and the immigration judge denied a continuance for El Alami to subpoena those individuals. But in the immigration context, we have not "recognized anything resembling a right to confrontation rooted in the Due Process Clause." *Indrawati*, 779 F.3d at 1300 n.23. Because the fraud report was reliable, probative, and fair evidence, El Alami's due process rights were not violated. *See id.* at 1299.

Lastly, the Board did not err in denying El Alami's motion for reconsideration. We review that decision for abuse of discretion and consider only whether the Board exercised its discretion arbitrarily or capriciously. *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009). El Alami's motion reiterated arguments that the Board had already rejected or deemed waived, which gave the Board "no reason to change its mind." *Calle v. U.S. Att'y Gen.*, 504 F.3d 1324, 1329 (11th Cir. 2007).

14                    Opinion of the Court                    21-13220

We **DISMISS IN PART** and **DENY IN PART** El Alami's petitions for review.